# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01948-NYW

NICHOLAS DUFF,

    Plaintiff,

v.

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,

    Defendant.
___

## MEMORANDUM OPINION AND ORDER
___
Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant Allstate Vehicle and Property Insurance Company's ("Defendant" or "Allstate") Motion for Summary Judgment [#26, filed May 7, 2018] ("Motion"). The Motion is before the court pursuant to the Order of Reference dated October 5, 2017 [#18], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. The court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, Allstate's Motion for Summary Judgment is **GRANTED**.

## PROCEDURAL BACKGROUND

    Plaintiff Nicholas Duff ("Plaintiff" or "Mr. Duff") commenced this action on June 30, 2017, by filing a Complaint in the District Court for Pueblo County, Colorado. [#4]. Plaintiff asserts three claims for Breach of Contract, Bad Faith Breach of Insurance Contract, and "Statutory Bad Faith Pursuant to C.R.S. §§ 10-3-1113(3), 1115, 1116," arising out of property loss resulting from a wind storm in March 2017 which followed an earlier hail storm in August 2016. [*Id.*] On August 11, 2017, Allstate removed the action to this court asserting jurisdiction

pursuant to 28 U.S.C. § 1332. *See* [#1].

On October 11, 2017, the court held a Scheduling Conference at which it set certain pretrial dates and deadlines, including deadlines of April 9, 2018 by which to complete discovery, February 8, 2018 by which to designate principal experts, and March 12, 2018 by which to designate rebuttal experts. [#19; #20]. On the Parties' joint motion, the court subsequently extended these deadlines to May 21, 2018, March 22, 2018, and April 12, 2018, respectively. [#24; #25].

On May 7, 2018, Allstate filed the Motion for Summary Judgment as to all three claims. [#26]. Shortly thereafter, Plaintiff filed a motion for extension of time to designate expert witnesses on the basis that his expert "was unable to inspect the affected property until the passage of the deadline." [#28]. The court struck the motion without prejudice for failure to comply with Local Rules of Practice 6.1(c) and 7.1(a). [#29]. On May 29, 2018, Plaintiff filed a Response to the Motion for Summary Judgment, [#30], to which he attached the declaration of Neil Hall and Mr. Hall's expert report, [#30-1]; and, approximately one week later, he filed an amended motion for extension of time to designate expert witness, [#31]. In the amended motion, counsel for Plaintiff changed his explanation for the delay and stated that the "expert designations were timely prepared however not filed or propounded to the other side of which was not discovered until a subsequent file review post a staff turnover." [#31 at 2]. The certificate of conferral represented that counsel for Defendant would "think about it." [*Id.*] The court ordered Defendant to file a response or notice indicating its position with respect to the amended motion, [#32]. Defendant thereafter filed a response opposing Plaintiff's request on the bases of no good cause and no explanation for the delay, asserting that the extension would substantially delay the case and prejudice Allstate, and asking that the court not consider Neil

Hall's declaration or report as Plaintiff had never disclosed Mr. Hall as a witness. [#33]. The following day, Defendant filed a Reply in support of its Motion for Summary Judgment [#34]. On June 14, 2018, the court denied the amended motion, noting that Plaintiff did not renew his motion for an extension of the principal expert deadline until approximately two and a half months after expiration of the deadline and almost one month after the court had ruled on the initial motion, noting that the motion failed to meet the burden imposed by Federal Rule of Civil Procedure 16(b), and finding that extending the deadline would result in prejudice to Defendant and overall undue delay in the proceeding. [#35]. The court ruled that it would not consider Mr. Hall's previously undisclosed report in its adjudication of the Motion for Summary Judgment. [*Id.*]

Now, having reviewed the Parties' briefing, the entire docket, and the applicable case law, this court finds that oral argument would not materially assist in the disposition of the Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,*

477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

When, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id.* at 670–71. Once the movant meets this initial burden, the nonmovant assumes the burden to put forth sufficient evidence to demonstrate the essential elements of the claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999). Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). And the nonmoving party's evidence must be more than "mere reargument of his case or a denial of an opponent's allegation," or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

**UNDISPUTED MATERIAL FACTS**

The Policy

The following facts are taken from the Motion for Summary Judgment and associated briefs and are undisputed.[1] On July 8, 2016, hail predicted to be greater than 1.00 inch in diameter occurred at 4213 Widener Street in Pueblo, CO, 81008-2802 (the "Residence"). [#26-11 at 52, 57 (Expert Report of William Badini)]. In or around August 2016, Plaintiff purchased the Residence, [#26-12 at 30:1-3], also obtained from Allstate Policy 987718579 (the "Policy"), which has an effective date of August 23, 2016. [#26-1 at ¶ 3; #26-2 at 4]. The Policy provides coverage for property only to the extent that the damage was incurred during the policy period; in other words, the Policy does not cover any damage or conditions that existed prior to August 23, 2016. [#26-1 at ¶ 4; #26-2 at 14-15]. Plaintiff testified he understood that the effective date of the Policy is August 23, 2016, and that only losses occurring during the policy period are covered. [#26-12 at 81:1-10]. The Policy contains a clause voiding coverage in the event the policyholder or his agents misrepresent or conceal material facts. Specifically, the Policy states in pertinent part:

> **Misrepresentation, Fraud Or Concealment**
> …
> **We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

[#26-2 at 16]. And the Policy provides that Plaintiff cannot bring an action against Allstate unless he has complied with all policy terms:

> **Action Against Us**

---

[1] Plaintiff did not respond to Defendant's statement of facts, but rather set forth his own statement of affirmative facts.

> No one may bring an action against **us** unless there has been full compliance with all policy terms.

[#26-2 at 17]. The Policy requires the policyholder to take certain action so as to be eligible for payment, including allowing Allstate to inspect the property and providing Allstate with a sworn proof of loss within 60 days after the loss:

> **What You Must Do After A Loss**
>
> In the event of a loss to any property that may be covered by this policy, **you** must:
>
> (a) immediately give **us** or **our** agent notice…
>
> (b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses…
> …
>
> (d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies…
> …
>
> (f) as often as **we** reasonably require: (1) show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others…
> …
>
> **We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

[#26-3 at 3].

<u>The August 2016 Hail Storm</u>

On October 4, 2016, Plaintiff notified Allstate that his roof had been damaged by hail during a storm that occurred in August 2016 (the "August 2016 Claim"). According to Plaintiff, large hailstones struck his property in August 2016, causing significant damage to the roof and damaging his external air-conditioner unit. [#26-1 at ¶ 5; #26-4 at 6-8]. He did not take any

6

pictures of the hail or record the date of the storm. [#26-12 at 48:4-49:10]. Plaintiff testified that the August 2016 storm was significant, and contributed to granule loss on his roof. [*Id.* at 46:3-8]. John Bogdanoff, employed by Allstate as a Claims Service Leader, attested that Plaintiff and his wife, who is also insured under the Policy, "repeatedly told Allstate that the August 2016 hail storm destroyed their roof." [#26-1 at ¶ 6]. Allstate responded to Plaintiff by assigning the August 2016 Claim number 0431006352, and scheduled an inspection for October 14, 2016. [*Id.* at ¶ 7; #26-4 at 14].

Allstate reviewed the local weather data and concluded that no hail storm had occurred during the Policy period, or rather, between August 23, 2016 and the October 14, 2016 inspection, [#26-4 at 12; #26-1 at ¶ 8], and examined the Residence and found no physical or additional damage to the property, *see* [#26-12 at 96:5-23], and denied the claim in its entirety. On October 31, 2016, Allstate contacted Plaintiff and again explained they had denied the claim because they found there were no hail storms near his Residence during the Policy period. Allstate nonetheless offered to hire an independent third-party engineer to reevaluate the August 2016 Claim. Plaintiff agreed to the investigation, and Allstate hired a third-party engineer to inspect the Residence. [#26-1 at ¶ 10; #26-4 at 12; #26-12 at 97:12-98:23].

On November 9, 2016, engineer Kevin A. Wasli, P.E. ("Mr. Wasli") of the ProNet Group, Inc. performed a comprehensive examination of the Residence and an analysis of the local weather data to determine whether hail struck the Residence during the Policy period. [#26-1 at ¶ 11; #26-7 at 6]. Mr. Wasli produced a certified engineering report following his inspection. He concluded that there were certain hail marks at the Residence from storms prior to the commencement of the Policy, but observed that the weather data reflected that no hail-producing storms had occurred near the Residence during the Policy period. [#26-7 at 6-7; #26-1

at ¶ 12]. Allstate contacted Plaintiff and explained that the third-party engineer confirmed Allstate's previous findings that there was no hail storm during the Policy period. Plaintiff declined to view the engineer's report. [#26-1 at ¶ 13; #26-4 at 2; #26-12 at 99:20-101:3].

Allstate disclosed the report of Mr. William Badini ("Mr. Badini"), an expert meteorologist, which includes a review of all available meteorological data, including radar, atmospheric, and on-the-ground hail reports. Mr. Badini concluded that there was no evidence that hail struck the Residence in August 2016 and the following months. [#26-11 at 57-58]. In his Response, Plaintiff now admits there was no storm in August 2016. [#30 at 10] ("Duff did not knowingly make false statements to gain extra on his claim, but rather, in the light of the expert testimony just was incorrect about his belief a storm occurred in August 2016.").

The March 2017 Wind Storm

On the evening of March 23, 2017, a wind storm, without hail, occurred near the Residence (the "March 2017 Claim"). [#26-11 at 56-57]. Plaintiff testified that he believed that hail fell during the March 2017 storm, but that he did not personally observe hail. [#26-12 at 52:24-53:16]. He notified Allstate of the storm, and Allstate arranged for another inspection of the Residence. Allstate assigned the March 2017 Claim number 0450342464. [#26-1 at ¶ 14; #26-8 at 12-15].

Allstate inspected the Residence on April 10, 2017. Allstate observed indications of hail of indeterminate date, as well as some shingles that had been pulled up by wind. The Allstate adjuster who inspected the roof observed older hail marks, and indicated interest in reopening the August 2016 hail claim to ensure it had been properly adjusted. [#26-1 at ¶ 15; #26-8 at 9]. This initial inspection did not cover any other portion of the Residence.

At his deposition, Plaintiff testified that he "think[s]" he mentioned to the Allstate

8

adjuster at the April 10, 2017 inspection that the wind storm had caused a water stain in his garage and damage to his gutter, and that the wind had broken a fan on the back patio. According to the Allstate claim file, Plaintiff told the Allstate adjuster about the roof alone, and did not inform the adjuster about the other damage he claimed. There is no documentation of any other claim of damage, and no party recalls this request except for Plaintiff's uncertain memory. All documentary evidence refers solely to claims for damage to the roof. *E.g.*, [#26-8 at 13]. Defendant acknowledges that it is disputed whether Plaintiff reported damage to the garage, gutter, and fan to Allstate during the April 10 inspection. It is undisputed that the Allstate adjuster only inspected the roof and did not inspect the other areas that Plaintiff claims were damaged during the March 23, 2017 storm.

The adjustor investigated the hail damage found during the April 10 inspection, but noted that Allstate had previously denied the August 2016 claim because the hail damage was preexisting. [#26-1 at ¶ 17]. On April 14, the adjustor drafted and sent Plaintiff an estimate based solely on the wind damage to the roof. [#26-9]. This estimate was below the policy deductible, and so Allstate paid nothing to the Plaintiff. [*Id.*; #26-1 at ¶ 18].

Plaintiff was unhappy with this appraisal, and expressed his discontent in several communications with Defendant, asserting that he was entitled to compensation for damage to the garage, gutter, and fan. [#26-12 at 8; #26-5 #26-1 at ¶ 19]. In light of this dissatisfaction and Plaintiff's claim of damage beyond the roof, Defendant requested that Plaintiff authorize a follow-on inspection. [#26-1 at ¶¶ 19–20]. After initially agreeing to another inspection, Plaintiff reneged and denied Allstate permission to conduct a follow-on inspection. [#26-8 at 6]. Defendant reached out to Plaintiff again to resolve the matter, but was denied. [#26-1 at ¶¶ 25–26]. Plaintiff represented that he retained a public adjusting company, Paragon Services, but that

company does not appear to have entered its appearance or communicated with Defendant. Plaintiff then filed this current action.

## ANALYSIS

As an initial matter, the court notes that the Plaintiff has, consistent with prior representations to this court, disclaimed any intent to seek relief based on the August 2016 Claim. [#30 at 8–9; #17 at 2]. Because the Complaint does not clearly assert an entitlement to relief on this claim and because Plaintiff disclaims it in his Response, the court finds it appropriate to disregard all argument on this point and refrain from determining summary judgment on this issue. Simply stated, recovery for the August 2016 Claim is not at issue in this case. However, the truth or falsity of the August 2016 Claim is relevant insofar as Defendant claims that filing a false claim would bar further recovery for the March 2017 Claim. [#26 at 19–20].

For the reasons discussed below, the court finds that there is no genuine issue of material fact in this case and that summary judgment for the Defendant is appropriate on all claims.

**I.** *Plaintiff's representations regarding the August 2016 Claim do not bar the March 2017 Claim.*

Defendant argues that it is entitled to summary judgment because Plaintiff engaged in misrepresentation in asserting a claim for the August 2016 Claim which forfeits any further claim under the policy, and thus Plaintiffs' claims for the March 2017 claim must fail. [#26 at 19–20; #34 at 6–7]. The policy contains provisions stating that "[Defendant] do[es] not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." [#26-2 at 16]. Plaintiff responds to this claim by arguing that he never "knowingly" made any false statements and since Defendant already denied that claim and Plaintiff no longer seeks relief as to it, it is no longer at issue. [#30 at 9–10].

The plain language of the policy states that the Defendant is relieved of covering "any loss . . . in which any insured person has concealed or misrepresented any material fact." It is limited to individual claims; it does not operate as categorical relief for the Defendant to deny *new and unrelated claims* months after the false representations were discovered in October 2016 and Defendant continued to accept insurance premiums and adjust new claims of loss. Therefore, the court concludes that Plaintiff's misrepresentations regarding the August 2016 Claim do not bar his March 2017 Claim under the language of the policy. Defendant's authority supports this proposition. In both *American Diver's Supply & Manufacturing Co. v. Boltz*, 482 F.2d 795 (10th Cir. 1973) and *Northwestern National Insurance Co. v. Barnhart*, 713 P.2d 1360 (Colo. App. 1985), the misrepresentations occurred in connection with the claims at issue, not during a prior claim.

To the extent that Plaintiff's misrepresentations may have made the entire policy voidable, Defendant has waived such a claim by failing to exercise its right to void the policy on this basis despite being aware of the misrepresentations since at least October 2016 when their investigation of the August 2016 Claim revealed there was no hail storm and the claim was self-evidently fraudulent. [#26-1 at ¶ 11]. *See Bernhardt v. Hemphill*, 878 P.2d 107, 112 (Colo. App. 1994) (discussing ratification of voidable contracts); *Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 571 F. Supp. 2d 1199, 1210 n.62 (D. Colo. 2008) (same). Defendant's argument would permit an insurer to maintain the policy so long as profitable but deny payment based on a prior misrepresentation if the insured brought a new, unrelated claim. Thus, the court holds that the policy provision regarding misrepresentations is both not applicable to the March 2017 Claim and waived to the extent it could function as a basis to void the entire policy.

**II.** *Plaintiff may not recover for the March 2017 Claim because he denied Allstate's reasonable requests for further inspection of the property and because Allstate's actions were reasonable and appropriate.*

The Policy requires the insured to permit inspection of the property as reasonably required following a claim of loss. [#26-3 at 3]. Defendant argues that Plaintiff's claims must fail because there is no genuine dispute that Plaintiff barred Allstate from conducting a follow-on inspection of his property as required under the policy. [#26 at 17–19]. Because Duff violated this provision, Allstate argues that it was incapable of addressing Duff's subsequent allegations of damage to the garage, gutter, and fan. Plaintiff's refusal caused the denial of further payments or claims adjustment for the March 2017 Claim, and thus the Allstate argues that it is entitled to summary judgment. [*Id.*].

Plaintiff does not challenge Defendant's facts and does not argue that he did not bar Defendant from conducting a new inspection following his new claim of loss. Rather, Plaintiff responds that Defendant's position "would seemingly allow the insurer endless inspections of the same damaged property" which were unnecessary in this case because Allstate had already conducted sufficient inspections. [#30 at 9]. Plaintiff does not argue that he asserted his claim for damage to the garage, gutter, and fan in the initial inspection, obviating any need for further inspections.

The court finds that there is no genuine issue of fact over Plaintiff's failure to report damage to the garage, gutter, and fan during the initial April 10 inspection of the Residence and subsequent prohibition on further inspections following his new claim of loss to the garage, gutter, and fan. The only evidence that Plaintiff reported damage to the garage, gutter, and fan during the initial inspection is Plaintiff's own testimony that he "think[s]" he did. [#26-12 at 10].

12

This recollection is both equivocal and uncorroborated by any evidence offered by Plaintiff or contained in Allstate's claim file. Plaintiff has omitted any argument on this contention in opposing the motion to dismiss. There is no documentation that supports this point, and the documentation that is present does not refer to any damage other than that to the roof. In light of the clear weight of evidence and Plaintiff's apparent abandonment of this point, the court finds that there is no genuine issue over Plaintiff's failure to report damage to the garage, gutter, and fan during the initial April 10 inspection. The parties agree that Plaintiff then denied Allstate's request to conduct a new inspection.

Accordingly, this court concludes that Defendant is entitled to summary judgment because Plaintiff failed to abide by the terms of the Policy in permitting a follow-on inspection of the Residence after claiming new damages not previously reported during the April 10 inspection. Under the Policy, this forfeits any claim to further relief. Further, this renders Allstate's actions reasonable in context as a matter of law. Defendant's refusal to offer payments under the policy based on claims of damage it was denied access to assess was entirely reasonable.

Plaintiff's argument to the contrary does not persuade this court. In responding to Defendant's claim that another follow-on inspection was required, Plaintiff raises the spectre of "endless inspections of the same damaged property." [#30 at 9]. But there were not "endless inspections," there was an initial inspection, a new claim of damage, and then a rebuffed request for a subsequent investigation. Plaintiff further argues that "Allstate kept fully refusing any claim which would likely leave Plaintiff to [sic] the very strong conviction that Allstate is there to do nothing but take his premium payments." [*Id.*]. This is not a legal argument. Mr. Duff's dissatisfaction and with Defendant's business practices and unilateral perception of Allstate's

intent do not excuse him from adhering to the Policy requirement and practical necessity of permitting Defendant access to the Residence to conduct a follow-on inspection after receiving additional reports of damage. Plaintiff further states that "Allstate had already come to the Property in early April to investigate damage from the March 2017 storm, and this was just another inspection that [would have] occurred to the Property, at least 3 since purchase of the home in August 2016." [*Id.*]. The number of prior inspections is irrelevant when Plaintiff asserts *new claims of damage*. Relevant here, there was only one prior inspection, and this court has already found that the Allstate adjuster was not made aware of potential damage beyond the roof when conducting that initial inspection. Therefore, Defendant acted in a reasonable, good-faith manner when requesting access to the Residence to conduct a new inspection, and its refusal to re-adjust its claim based on Plaintiff's refusal to permit access was appropriate.

In sum, Plaintiff forfeited any entitlement to compensation for the March 2017 Claim by denying the Defendant access to the Residence under the terms of the Policy, and in light of this, the Defendant's actions were reasonable as a matter of law. For those two independent-but-linked reasons, this court finds that summary judgment for the Defendant on all claims is appropriate.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Defendant Allstate Vehicle and Property Insurance Company's Motion for Summary Judgment [#26] is **GRANTED**;

(2) The Clerk of the Court shall enter Final Judgment in favor of Defendant Allstate Vehicle and Property Insurance Company and against Plaintiff Nicholas Duff, award costs to Defendant Allstate Vehicle and Property Casualty Insurance Company as the prevailing

party, and terminate this matter accordingly.


DATED:  October 30, 2018　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge